UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES B.,

                                 Plaintiff,

                v.

ANDREW M. SAUL,[1] Commissioner of
  Social Security,

                           Defendant.
_____

**DECISION
and
ORDER**

**19-CV-6493F
(consent)**

APPEARANCES:        LAW OFFICES OF KENNETH R. HILLER, PLLC
                           Attorneys for Plaintiff
                           KENNETH R. HILLER, and
                           JEANNE ELIZABETH MURRAY, of Counsel
                           6000 North Bailey Avenue
                           Suite 1A
                           Amherst, New York  14226

                           JAMES P. KENNEDY, JR.
                           UNITED STATES ATTORNEY
                           Attorney for Defendant
                           Federal Centre
                           138 Delaware Avenue
                           Buffalo, New York  14202
                                   and
                           KATHRYN L. SMITH
                           Assistant United States Attorney
                           United States Attorney's Office
                           100 State Street
                           Rochester, New York  14614
                                   and
                           NICOL FITZHUGH
                           Special Assistant United States Attorney, of Counsel
                           Social Security Administration
                           Office of General Counsel
                           601 East 12TH Street
                           Room 965
                           Kansas City, Missouri  64106

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 14, 2020, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 15).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on February 10, 2020 (Dkt. 10), and by Defendant on May 11, 2020 (Dkt. 13).

## BACKGROUND

Plaintiff James B. ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on July 16, 2015, for Social Security Disability Insurance benefits under Title II of the Act ("SSDI" or "disability benefits"). Plaintiff alleges he became disabled on May 1, 2011, based on hypertension since 1983, depression since 1990, diabetes since 1990 – not controlled, neuropathy in both feet since 2008 causing Plaintiff to lose balance and fall, sleep apnea since 1995, blew out left knee in 1995 requiring surgery and causing pain, and migraines since 2006 causing vomiting and nausea.  AR[2] at 175, 178.  On January 12, 2016, Plaintiff received a partially favorable determination with Plaintiff's disability benefits application approved although not for a disability onset date ("DOD") of May 1, 2011, as Plaintiff asserted in the disability benefits application, but as of July 16, 2015 ("the adverse DOD").  AR at 61-72, 77, 81.  At Plaintiff's timely request for an administrative hearing challenging the adverse DOD and contending disability since May 1, 2011, AR at 83-84, on May 1, 2018, a hearing was held in Rochester, New York, before administrative law judge

---

[2] References to "AR" are to page of the Administrative Record electronically filed by Defendant on September 27, 2019 (Dkt. 5).

Michael W. Devlin ("the ALJ).  AR at 27-60.  Appearing and testifying at the hearing were Plaintiff, represented by Justine Goldstein, Esq., and vocational expert Dawn Blythe ("the V.E.").  AR at 27.

On August 21, 2018, the ALJ issued a decision finding Plaintiff was not disabled at any time between the alleged DOD of May 1, 2011, and December 31, 2016, the date last insured for purposes of Plaintiff's SSDI claim, AR at 10-26 ("the ALJ's decision"), thus overturning the earlier administrative disability award, which Plaintiff timely appealed to the Appeals Council.  AR at 146-47.  On May 2, 2019, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  AR at 1-6.  On July 1, 2019, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On February 10, 2020, Plaintiff moved for judgment on the pleadings requesting the ALJ's decision be vacated or reversed with the matter remanded for further administrative proceedings (Dkt. 10) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum").  On May 11, 2020, Defendant moved for judgment on the pleadings (Dkt. 13) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 for Social Security Cases (Dkt.13-1) ("Defendant's Memorandum").  Filed on June 1, 2020, was Plaintiff's Response to the Commissioner's Brief in Support and in Further Support for Plaintiff's Motion for Judgment on the Pleadings (Dkt. 14) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED; the matter is REMANDED for further proceedings.

## FACTS[3]

Plaintiff James B. ("Plaintiff"), born April 26, 1952, was 59 years old as of May 1, 2011, his alleged DOD, and 66 years old as of August 12, 2018, the date of the ALJ's decision. AR at 21, 148, 175, 193. Plaintiff graduated high school and attended two years of college, obtaining a nursing degree. AR at 32, 179. Plaintiff's has previously worked as a general duty nurse, a nurse supervisor, and as a perfusionist (health care professional who operates cardiopulmonary bypass machine (heart-lung machine) during surgeries). AR at 21-22, 179. Plaintiff's most recent job was as a perfusionist from which Plaintiff was laid off in April 2011. AR at 33, 35. After the termination of his employment, Plaintiff was not able to find other employment and after attaining age 62, presented to the local SSA office to apply for social security where he was advised to apply for SSDI because of his impairments of diabetes and back issues. AR at 55. It is undisputed that Plaintiff has diabetes that has resulted in neuropathy of Plaintiff's upper and lower extremities. It is also undisputed that after losing his job in 2011, Plaintiff had a difficult time obtaining medical treatment and experienced an interruption of scheduled treatment from his primary care provider, Rochester General Medical Group Northridge Medical Group ("Northridge Medical"), as well as prevented Plaintiff from obtaining his medications. See AR at 223-24 (February 27, 2012 Progress Note from Northridge Medical stating Plaintiff has "not been seen for some time" and stopped taking his insulin over the summer but continued taking Metformin (blood sugar control) because

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

he was unable to obtain affordable medical insurance or his prescriptions), 466 (July 15, 2016 Northridge Medical Progress Note reporting Plaintiff "has been lost to follow-up for several years due to lack of insurance" with prescriptions provided by "another physician").  During this time, Plaintiff sometimes obtained prescriptions for his medications from Brian Dailey, M.D. ("Dr. Dailey"), with whom Plaintiff had previously worked.  AR at 627-46.

In connection with his disability benefits application, on November 25, 2015, Plaintiff underwent a consultative internal medicine examination performed by Harbinder Toor, M.D. ("Dr. Toor").  Dr. Toor noted Plaintiff's medical history included diabetes, diabetic neuropathy in the extremities, injury and pain in lower back and left knee, hypertension, sleep apnea, insomnia, depression, migraine headaches, balancing problems, irritable bowel syndrome, thalassemia trait (inability to properly generate red blood cells resulting in anemia), and ventricular tachycardia.  AR at 236-27.  Plaintiff's prognosis was "guarded," and Dr. Toor's medical source statement was that Plaintiff "has moderate to marked limitation in standing, walking, lifting, and carrying," pain in Plaintiff's legs "interfere[s] with his balance," Plaintiff 'has a mild to moderate limitation doing fine motor activity with the hands," "moderate limitation in sitting or bending," and "[p]ain can interfere with his routine. . . . "  *Id.* at 237.

On April 7, 2016, Plaintiff re-established care with at Northridge Medical with Thomas S. Roberts, M.D. ("Dr. Roberts") as his primary care physician.  AR at 442-58.  On August 12, 2018, Dr. Roberts completed a Treating Medical Source Statement, AR at 679-82, reporting treating Plaintiff every three to six months since April 2016, as well as once in 2012, and that Plaintiff's diagnoses included diabetes mellitus, hypertension,

sleep apnea, depression, diabetic neuropathy, and knee pain.  AR at 679.  Dr. Roberts

opined Plaintiff could not engage in full-time, competitive employment on a sustained

basis, that Plaintiff's symptoms were reasonably consistent with the objective medical

findings and functional limitations, and that Plaintiff is not a malinger.  *Id.*  According to

Dr. Roberts, Plaintiff's severe medical conditions would cause him to be off-task 25% of

a workday or workweek, Plaintiff could sit for more than 90 minutes, but only stand for

20 to 30 minutes and could stand/walk less than two hours in an eight-hour workday.

*Id.* at 680.  Plaintiff could frequently lift and carry 10 lbs., occasionally twist and

stoop/bend, rarely crouch/squat, or climb stairs, and never climb ladders.  *Id.* at 681.

Dr. Roberts further opined Plaintiff had significant limitations with reaching, handling,

and fingering attributed to numbness in his fingers caused by Plaintiff's diabetic

neuropathy, and shoulder pain.  *Id.* at 682.

At the May 1, 2018 administrative hearing, in response to the ALJ's questioning,

the VE testified that Plaintiff's PRW as a nurse supervisor was classified in the

Dictionary of Occupational Titles ("DOT") as "light" work, but as "sedentary" as

performed by Plaintiff.[4]  AR at 42.  Plaintiff's perfusionist job was classified in the DOT

---

[4] The regulations categorize jobs according to their physical exertion requirements as "sedentary," "light,"
"medium," "heavy," and "very heavy."  20 C.F.R. § 404.1567(a)-(e).  As relevant here,

  a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and
  occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a
  sedentary job is defined as one which involves sitting, a certain amount of walking and standing is
  often necessary in carrying out job duties. Jobs are sedentary if walking and standing are
  required occasionally and other sedentary criteria are met.
  (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or
  carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a
  job is in this category when it requires a good deal of walking or standing, or when it involves
  sitting most of the time with some pushing and pulling of arm or leg controls. To be considered
  capable of performing a full or wide range of light work, you must have the ability to do
  substantially all of these activities. If someone can do light work, we determine that he or she can
  also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity
  or inability to sit for long periods of time.

as "medium" work.  The VE further testified with regard to the hypothetical posed by the

ALJ that Plaintiff would not be able to perform the perfusionist job, and would be able to

perform the nurse supervisor job as Plaintiff performed it, *i.e.*, as sedentary work, but

not as classified in the DOT as light work, *id.* at 43-44, and that further restricting

Plaintiff's RFC of sedentary work to only frequent, as opposed to constant, handling and

fingering would sufficiently erode the sedentary occupational base to preclude any work.

*Id.*  The ALJ, in rendering his opinion, determined Plaintiff could not perform his PRW as

a general duty nurse or perfusionist, both of which are medium work, but Plaintiff could

work as a nurse supervisor which the ALJ found was "sedentary per the D.O.T." and

"light as performed," and required frequent handing and fingering.  *Id.* at 21-22.  This is

contrary to the VE's testimony that the nurse supervisor job is "light" per the DOT and

"sedentary" as Plaintiff performed it, and required more than the ability to frequently

handle and finger.

### DISCUSSION

**1.     Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

---

(c) Medium work. Medium work involves lifting no more than 50 pounds at a time with frequent
lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we
determine that he or she can also do sedentary and light work.
20 C.F.R. § 404.1567.

determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

2.    **Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir.

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

1982).  All five steps need not necessarily be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to

perform PRW relevant work, the Commissioner, at the fifth step, must consider whether,

given the applicant's age, education, and past work experience, the applicant "retains a

residual functional capacity to perform alternative substantial gainful work which exists

in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation

marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of

proof is on the applicant for the first four steps, with the Commissioner bearing the

burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4);

*Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff met the insured status requirements

for SSDI through December 31, 2016, AR at 15, has not engaged in substantial gainful

activity since May 1, 2011, his alleged DOD, *id.*, and suffers from the severe

impairments of lumber degenerative disc disease, history of injury in the left knee, left

knee degenerative joint disease, diabetes, diabetes neuropathy in the extremities,

ventricular tachycardia, hypertension, sleep apnea, insomnia, migraine headaches, and

obesity, *id.*, but that Plaintiff's history of irritable bowel syndrome ("IBS"), thalassemia

trait, major depressive disorder, and unspecified anxiety disorder, neither singly or in

combination, do not cause more than a minimal limitation in the claimant's ability to

perform basic work activities and thus are not severe.  *Id.* at 16-17.  The ALJ further

found that through the date last insured, Plaintiff did not have an impairment or

combination of impairments meeting or medically equal to the severity of any listed

impairment in Appendix 1, *id.* at 17, and that Plaintiff retains the RFC to perform

sedentary work as defined in 20 C.F.R. § 404.1567(a), except that Plaintiff can

occasionally lift and/or carry 10 lbs., frequently, as opposed to constantly, lift and/or

carry less than 10 lbs., stand or walk up to two hours and sit for six hours in an eight-hour workday, can push and/or pull 10 lbs., and is limited to only occasionally climbing ramps or stairs, occasionally balancing, stooping, kneeling, crouching, and crawling, can never climb ladders, ropes, or scaffolds and can frequently, as opposed to constantly, handle and finger bilaterally. *Id.* at 17-21.  Based on Plaintiff's RFC and the VE's testimony at the administrative hearing, the ALJ concluded that Plaintiff could perform his PRW as a nurse supervisor, *id.*, at 21-22, such that Plaintiff was not under a disability as defined in the Act at any time from the alleged May 1, 2011 DOD through December 31, 2016, Plaintiff's date last insured.  *Id.* at 22.

In support of his motion, Plaintiff argues the ALJ failed to properly evaluate the opinion of Dr. Roberts, Plaintiff's treating physician, and failed to incorporate into the RFC all the limitations assessed by Dr. Roberts, particularly with regard to the extent to which Plaintiff's ability to use his fingers and arms is diminished by diabetic neuropathy, Plaintiff's Memorandum at 11-18, and the ALJ failed to properly assess Plaintiff's credibility and to account for Plaintiff's subjective complaints based on Plaintiff's lack of treatment while without medical insurance. *Id.* at 18-23.  In opposition, Defendant argues the ALJ appropriately evaluated the overall record of Plaintiff's allegations of disabling limitations, Defendant's Memorandum at 13-21, and reasonably weighed Dr. Roberts's opinion in the context of the overall record in formulating the RFC. *Id.* at 21-28.  In reply, Plaintiff argues that because the ALJ failed to properly evaluate Dr. Roberts's opinion and to address or incorporate the more limiting aspects of the opinion into the RFC, the RFC is not based on substantial evidence, Plaintiff's Reply at 1-2, and the ALJ failed to properly assess Plaintiff's credibility and account for Plaintiff's

subjective complaints because of Plaintiff's lack of treatment following the termination of his employment.  *Id.* at 2.  A thorough review of the record establishes the ALJ committed an error as a matter of law in determining Plaintiff could perform his PRW as a nurse superintendent which is categorized in the DOT as light work, whereas Plaintiff's RFC limits Plaintiff to less than a full range of sedentary work.[6]

Specifically, as discussed, Facts, *supra*, at 6-7, at the administrative hearing, the VE testified the DOT "classifies" Plaintiff's nurse supervisor position as "light," whereas Plaintiff's administrative hearing testimony indicated the position as performed by Plaintiff was "sedentary."  AR at 42.  In contrast, the ALJ found Plaintiff could perform his PRW as a nurse supervisor which the ALJ erroneously stated is classified as "sedentary per the D.O.T." and "light as performed."  *Id.* at 21.  Given the ALJ determined Plaintiff's RFC permitted performing less than the full range of sedentary work, AR at 17, the ALJ's determination that Plaintiff could perform the nurse supervisor position, classified in the DOT as light, is not supported by substantial evidence in the record, but was clear error which was not harmless.  *See Jenkins v. Comm'r of Soc. Sec.*, 769 F. Supp.2d 157, 161-62 (W.D.N.Y. 2011) (ALJ's failure to properly apply relevant standard in considering disability benefits claimant's asserted impairments was not harmless error and required remand).  In particular, to establish disability, a claimant must be unable both to perform the functions and duties of the specific job he previously held, as well the functions and duties of that job as it is generally performed.  *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (holding that to establish disability, a claimant be unable to perform both (1) the functions and duties of the specific job he

---

[6] This point is not raised either by Plaintiff or Defendant.

once held, and (2) the functions and duties of that job as it is generally performed).  The DOT "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  Titles II & XVI: Use of Vocation Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, SSR[7] 00-4p, 2000 WL 1898704, at * 3. The Act's job classifications of sedentary, light, medium, heavy and very heavy "have the same meaning as they have in the exertional classifications noted in the DOT."  *Id.* Accordingly, regardless of whether the ALJ properly incorporated all the limitations assessed by Dr. Roberts into Plaintiff's RFC, the ALJ's determination that Plaintiff was limited to less than the full range of sedentary work yet could perform his PRW as a nurse supervisor was erroneous because although the nurse supervisor job was considered sedentary as performed by Plaintiff, the DOT classifies the job as light, *Jasinski*, 341 F.3d at 185, such that substantial evidence in the record only supports that Plaintiff could not perform the nurse supervisor job as classified in the DOT. Because the VE also testified that with the additional restriction limiting Plaintiff to no more than frequently handling or fingering, other than Plaintiff's nurse supervisor job, classified as sedentary as Plaintiff performed it, there were no other jobs Plaintiff could perform, such that substantial evidence in the record thus also supports that Plaintiff was disabled at least as of the administrative hearing on May 1, 2018.

Nevertheless, there remains the issue of when Plaintiff's RFC was reduced to work of sedentary exertion, again, not addressed by the parties.  "The onset date of

---

[7] "SSR" refers to Social Security Rulings which are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 402.35(b)(1).

disability is the first day an individual is disabled as defined in the Act and the

regulations."  Titles II & XVI: Onset of Disability, SSR 83-20, 1983 WL 31249, at *1

(S.S.A. 1983).[8]  Disability benefits awarded on Title II claims "may be paid for as many

as 12 months before the month an application is filed.  Therefore, the earlier the onset

date is set, the longer is the period of disability and the greater the protection received."[9]

SSR 83-20; 1983 WL 31249 at *1.  Further, an award of Title II disability benefits

requires disability be established prior to the claimant's date last insured, id., in the

instant case, December 31, 2016.  SSR 83-20 at *1.[10]

     With regard to disabilities of nontraumatic origin, as present in the instant case, in

establishing the disability onset date, the ALJ must consider "the applicant's allegations,

work history, if any, and the medical and other evidence concerning impairment

severity."  SSR 83-20 at *2.  As in the instant case, "[w]ith slowly progressive

impairments, it is sometimes impossible to obtain medical evidence establishing the

precise date an impairment became disabling."  Id.  Under such circumstances present

in the instant case involving progressive impairments of nontraumatic origin, specifically,

Plaintiff's progressive diabetic neuropathy, Facts, supra at 5-6, "[d]etermining the proper

onset date is particularly difficult when, for example, the alleged onset and the date last

worked are far in the past and adequate medical records are not available.  In such

---

[8] Although SSR was rescinded and replaced on October 2, 2018, by SSR 18-1p and SSR 18-2p, because the ALJ's decision was rendered on August 12, 2018, prior to the date of rescission, SSR 83-20 is controlling with regard to Plaintiff's action.  See Holstrom v. Comm'r of Soc. Sec., 2020 WL 3989349, at *4 n. 3 (W.D.N.Y. July 15, 2020) (citing Land v. Commissioner of Social Security, 2020 WL 1329982, *3 n. 3 (M.D. Fla. 2020)).

[9] Based on Plaintiff's filing his disability benefits application on July 16, 2015, Plaintiff could not be awarded disability benefits under Title II prior to 12 months earlier, i.e., July 16, 2014, even if the record establishes Plaintiff was disabled prior to July 16, 2014.  SSR 83-20 at *1.

[10] In contrast, "[u]nder Title XVI, there is no retroactivity of payment."  SSR 83-20 at *1.  Further, unlike Title II, disability eligibility under Title II does not requiring disability by an insured status deadline.  Id.  Plaintiff did not apply for disability benefits under Title XVI.

cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.  SSR 83-20 at 2. SSR 83-20 further provides that "the [onset] date alleged by the individual should be used if it is consistent with all the evidence available.  When the medical or work evidence is not consistent with the allegation, additional development may be needed to reconcile the discrepancy.  However, the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record."  *Id.* at *3. "SSR 83-20 plainly provides that where the medical evidence of record does not provide a *clear* onset date and the date must be inferred, the ALJ should seek the assistance of a medical expert to make this inference."  *Perry v. Berryhill*, 2019 WL 105304, *5 (W.D.N.Y. 2019) (emphasis added).  The ALJ may also call and rely upon the testimony of lay witnesses, such as a claimant's "family members, friends, and former employers," in determining an onset date. SSR 83-20, 1983 WL 31249 at *3.

In the instant case, although Plaintiff asserts May 1, 2011 as his DOD, the record establishes Plaintiff was not working on May 1, 2011 because he was laid off from his most recent job as a perfusionist and attempted, albeit unsuccessfully, to obtain new employment for several years after the lay-off, as well as that Plaintiff maintains he was having physical difficulties performing the perfusionist job prior to being terminated.  AR at 52-55.  The Commissioner initially administratively determined Plaintiff was disabled as of July 16, 2015, which is the date Plaintiff applied for disability benefits, but which does not coincide with any specific medical evidence or opinion in the record.  Further, the May 1, 2018 administrative hearing at which the ALJ obtained the VE's testimony regarding Plaintiff's PRW was held on May 1, 2018, after Plaintiff's date last insured,

December 31, 2016, for purposes of disability benefits under Title II, and thus provides no basis to ascertain Plaintiff's DOD as the hearing did not precede Plaintiff's date last insured.  Accordingly, the court is unable to determine when Plaintiff became disabled based on his inability to perform work of greater than sedentary exertion, including whether, based on Plaintiff's limitations as found by the ALJ and the opinion of the VE, Plaintiff was disabled prior to December 31, 2016, *i.e.*, Plaintiff's date last insured for purposes of SSDI, such that the DOD determination is a disability determination which is an issue reserved to the Commissioner, *see Holstrom*, 2020 WL 3989349, at **3-4 (remanding for further proceedings where the plaintiff's DOD was not clear from the record), and requires the matter be REMANDED for further proceedings as to when Plaintiff became disabled.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is GRANTED; Defendant's Motion (Dkt. 13) is DENIED; the matter is REMANDED for further administrative proceedings consistent with this Decision and Order.  The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 8th, 2021
            Buffalo, New York